IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Onyx Environmental Services, LLC,

                Plaintiff,                          Case No. 3:04CV7093

      v.                                     ORDER

Bruce Maison, et al.,

                Defendants.

Plaintiff Onyx Environmental Services (Onyx) brought suit against defendants Bruce Maison and William Feniger, two employees, of the now defunct Environmental Purification Industries Company (EPI). Onyx alleges that Maison and Feniger fraudulently induced it to enter into a series of contracts with EPI for processing and recycling of waste paint.

Jurisdiction exists under 28 U.S.C. § 1331.

Pending are Maison's and Feniger's motions for summary judgment. For the reasons that follow, those motions will be denied.

**Background**

Onyx provides waste management services to its customers. The State of Minnesota contracted for Onyx to dispose of waste household paint collected in Minnesota's Household Hazardous Waste Program. Under this program, residents of Minnesota deposit waste household paint at a central collection point, and Onyx then consolidates and ships the waste paint for recycling.

EPI was an environmental services firm that recycled various types of waste paint. It ceased operations in 2001. Maison was both the president and a director of EPI. Feniger was either a director or an officer.[1]

In May, 1994, EPI and Onyx's predecessor contracted for EPI to process and recycle waste paint (the Service Agreement).[2] As part of the Service Agreement, EPI warranted that the waste material "will be processed, disposed of or treated within thirty (30) days of delivery".

EPI had to issue Certificates of Recycling (COR) to Onyx in conjunction with an invoice to receive payment. Each COR verified "that all Waste Material received by it [EPI] and all treatment residues have been properly and safely treated and disposed in compliance with all applicable laws and regulations." Onyx needed the CORs to meet its contractual obligations with the State of Minnesota.

Each party had a yearly option to terminate the Service Agreement with sixty days written notice. Neither party did so.

From 1994 to 1999, EPI transformed the waste paint Onyx delivered into a powder, a mastic putty-type material, or into reusable latex. Throughout 1999 and 2000, however, EPI simply accepted the shipments and stored the drums containing the waste paint at a warehouse. Maison continued to sign CORs that stated the waste paint "*has been processed* and will be recycled". (Emphasis supplied).

---

[1]

Maison claims that Feniger was EPI's chief executive officer. Feniger states that he was either an officer or a director.

[2]

Onyx did not disclose the May ,1994, contract in its complaint or amended complaint. In my earlier order overruling Maison's motion for judgment on the pleadings and Feniger's motion to dismiss, I was unaware that a contract existed between the parties.

2

When EPI shutdown in 2001, it abandoned over two thousand 55 gallon drums of waste paint received from Onyx. In August, 2002, Onyx learned about the abandoned drums of waste paint. To meet its contractual obligations with the State of Minnesota, Onyx paid $151,906 to remove and dispose of the drums.

## Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In deciding a summary judgment motion, a court examines more than just the pleadings and assesses the proof to determine if there is a need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party meets its burden of showing that no evidence supports a claim, then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## Discussion

At issue in this case is whether Maison and Feniger used false CORs to induce Onyx to keep doing business with EPI. Maison signed each COR, stating that the waste paint "has been processed and will be recycled". Onyx claims Maison and Feniger knew that the CORs were inaccurate and that the waste paint had not been processed.

In their motions for summary judgment Maison and Feniger argue that:  1) Onyx cannot assert a fraud claim because Onyx's only viable claim is against EPI for breach of contract; 2) Onyx

3

cannot prevail on its fraud claim because Onyx cannot prove any intent to defraud and that Onyx did not rely on the alleged misrepresentations; and 3) the economic loss doctrine bars recovery. Additionally, Feniger argues that he did not authorize or ratify any of Maison's alleged misrepresentations.

### I. Ohio Law Does Not Preclude Onyx's Fraud Claim

Maison and Feniger assert that Ohio law precludes Onyx from bringing a tort action against them because Onyx has a contract action against EPI. They contend that Ohio law bars any tort claim where the damages are the same as those available in a potential breach of contract action.

Maison and Feniger rely on *Med. Billing, Inc. v. Med. Mgmt. Sciences, Inc*., 212 F.3d 332 (6th Cir. 2000). In that case, the defendants promised the plaintiffs they would use a particular formula to calculate compensation to induce them to enter into the contract. *Id*. at 334. The contract incorporated that promise. *Id.* When the defendants did not use the formula they committed both fraud and breach of contract. *Id.* at 335. The Sixth Circuit, interpreting Ohio law, struck down the jury's award of fraud damages as well as contract damages as redundant. *Id.* at 339.

Here, Onyx has no breach of contract action against Maison or Feniger and thus tort damages are not redundant. To the extent Maison and Feniger argue that Onyx's fraud claim is duplicative of a breach of contract claim against EPI, the Court of Appeals of Ohio stated, in the case the Sixth Circuit relied on in *Med. Billing*: "[T]he mere existence of a plaintiff's inchoate cause of action against one party for breach of contract does not foreclose an action in tort against another party". *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 54 Ohio App. 2d 177, 182 (Ohio Ct. App. 1977). Thus Ohio law does not preclude Onyx's fraud claim.

4

## II. Genuine Issues of Material Fact Remain
## as to Onyx's Fraud in the Inducement Claim

Maison and Feniger also argue that Onyx has not presented sufficient evidence to make out a prima facie case of fraud in the inducement.

As an initial matter, the parties do not agree which agreement or agreements are at issue. Maison and Feniger contend that Onyx must show they did not intend to perform under the Service Agreement when EPI entered into it in 1994. But Onyx does not argue that Maison and Feniger fraudulently induced it to enter into the Service Agreement. Rather, Onyx asserts that Maison and Feniger induced it to continue to contract with EPI by stating in each COR that the waste paint "had been processed". Thus, Onyx's claim is based on a series of contracts with EPI, not the 1994 Service Agreement.

The issue, then, is whether the parties had one contract, the Service Agreement, or separate contracts for each shipment. The circumstances indicate that an individual contract existed for each shipment.

The Service Agreement contained the terms by which the parties would do business, but said nothing about any specific shipments. The Service Agreement did not require Onyx to ship a set amount of waste paint, nor did it require EPI to process any. Rather, the Service Agreement outlined the terms the parties used when Onyx chose to ship waste paint to EPI for processing and recycling.

Onyx issued annual purchase orders setting the price it would pay EPI. After Onyx received the CORs for a shipment, it paid EPI that price. Onyx did not pay EPI in one lump sum. It apportioned consideration to each shipment of waste paint. Thus, a jury could conclude the parties entered into a new contract each time Onyx shipped waste paint to EPI.

With that in mind, the question is whether Onyx has presented sufficient facts to sustain a

5

claim of fraudulent inducement for each distinct transaction. Maison and Feniger contend Onyx cannot prevail on its fraud claim because Onyx cannot prove any intent to defraud and Onyx did not rely on the alleged misrepresentations.

To prevail on a claim of fraud in the inducement, a plaintiff must prove: 1) a representation; 2) material to the transaction; 3) made falsely, with knowledge of its falsity; 4) with the intent of misleading another into relying upon the false statement; 5) justifiable reliance on the representation; and 6) resulting injury proximately caused by such reliance. *Burr v. Bd. of County Comm'r of Stark County*, 23 Ohio St. 3d 69 (1986); *see ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 502 (1998) (The elements to prove a claim of fraudulent inducement are essentially the same as the elements of fraud.).

The parties do not seriously dispute that Maison made a representation material to the transaction.

The dispute in this case involves the term "has been processed and will be recycled." The defendants argue that they "processed" the paint shipments by accepting them, doing the related paperwork, and storing the drums. Thus, the defendants argue, they made no misrepresentation when they told Onyx that they had "processed" the shipments in the OCRs sent before the next shipment was sent.

A jury could find that Maison's representations that EPI had processed the waste paint were false, and that Maison and Feniger knew they were false. Onyx presented evidence that processing in the industry means to "change the form of the material". EPI, however, did not change the waste paint into another form, but merely stored it in a warehouse. In addition, Maison and Feniger worked in the industry for several years. From this a jury could infer they knew the meaning of processing

6

within the industry. Thus, a jury might conclude that Maison and Feniger knowingly made false statements.

Further, Onyx presented evidence that it relied on the alleged misrepresentations. It submitted testimony that without the false representation in each COR, Onyx would not have sent further shipments to EPI.

Maison and Feniger argue that, at one point, an Onyx representative visited the EPI warehouse and saw stored drums of paint. Whether such observation sufficed to put Onyx on notice that the paint it was shipping was merely being stored rather than being treated for recycling – and thus could not have relied on any misrepresentations – is an issue of fact for the jury.

Finally, Onyx presented sufficient facts that it suffered damage as a result of the fraud. Onyx had to remove the drums of waste paint to meet its obligations to the State of Minnesota at a cost of $151,906.

Therefore, viewing the evidence in the light most favorable to Onyx, a jury could conclude Maison and Feniger fraudulently induced Onyx to continue to contract with EPI.

### III. The Economic Loss Doctrine Does Not Bar Onyx's Fraudulent Inducement Claim

Maison and Feniger claim the economic loss doctrine bars Onyx's fraud claim. The economic loss doctrine prevents a party from recovering economic losses in tort that result from "a breach of duties assumed only by agreement." *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414 (2005).

Onyx alleges Maison and Feniger breached duties independent of the contracts. Fraudulent inducement involves a general duty to avoid wrongful conduct that induces a party to enter into a contract. *Mesaros v. FirstEnergy Corp.*, 2005 WL 2460739, *8 (N.D. Ohio, Oct. 5, 2005). The

7

contracts, in contrast, impose only duties to meet specific obligations enumerated therein. Because these fraud and contract duties are distinct from one another, the economic loss doctrine is no bar to Onyx's fraud claim.

### IV. Feniger May Be Liable for Maison's Representations

Finally, Feniger argues that he is not liable for Maison's representations. Onyx contends that Feniger, an officer of EPI, is liable for torts committed under his control. Specifically, Onyx argues Feniger tacitly authorized the alleged misrepresentations contained in the CORs and that he had a duty to disclose that EPI never processed the waste paint.

An officer can be "liable for a tort committed by the corporation under his control, or with his participation or cooperation." *Central Benefits Mut. Ins. Co. v. RIS Admin. Agency, Inc.*, 93 Ohio App. 3d 397, 403 (Ohio Ct. App. 1994) (citing *Young v. Featherstone Motors, Inc.*, 97 Ohio App. 158, 171 (Ohio Ct. App. 1954)). Tacit knowledge and approval is enough to create a jury question as to an officer's personal liability for a tort committed by a corporation. *Id.*

Onyx presented evidence that Feniger controlled the day to day operations of EPI and interacted with Maison daily. Feniger and Maison were both officers of EPI. Indeed, Feniger owned the warehouse where EPI stored the waste paint. Thus, a jury could find that Feniger tacitly authorized Maison's representations.

Second, Onyx argues Feniger had a duty to disclose that EPI never processed the waste paint. An officer can be liable for another officer's misrepresentations where he or she has a duty to speak. *See Miles v. Perpetual Savings & Loan Co.*, 58 Ohio St. 2d 97, 99 (1979). A party has a duty to speak and will be liable for non-disclosure:

> if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another pary [sic] to act or refrain from acting, and the

non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading.

*Central States Stamping Co. v. Terminal Equipment Co., Inc.*, 727 F.2d 1405, 1408 (6th Cir. 1984) (quoting *Miles*, 58 Ohio St. 2d at 100).

The duty to speak is not dependent on "the existence of a fiduciary relationship between the parties" and "may arise where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Id.* at 1409.

Onyx presented evidence Feniger was aware of the representations in the CORs because of his control of the daily operations at EPI. Taking the evidence in the light most favorable to Onyx, a jury could infer that because of his position, Feniger had a duty to inform Onyx that EPI never processed the waste paint. Thus, for either reason, Feniger may be liable for Maison's misrepresentations.

## V. Punitive Damages

Punitive damages are available for fraud actions. *Locafrance U.S. Corp. v. Interstate Distribution Services, Inc.*, 6 Ohio St. 3d 198, 202 (1983). Because Onyx can maintain a fraud action against Maison and Feniger, it may seek punitive damages.

## Conclusion

For the foregoing reasons, it is therefore,

ORDERED that:

1. Defendant Maison's motion for summary judgment be, and the same hereby is, denied.

2. Defendant Feniger's motion for summary judgment be, and the same hereby is, denied.

So ordered.

/s/James G. Carr
James G. Carr

9

Chief Judge